**Richard L. SANDSTROM, on Behalf of his son and legal ward, Richard C. SANDSTROM, Plaintiff,**

v.

**CHEMLAWN CORPORATION and Chemlawn Services Corporation, Defendants.**

Civ. No. 89–0182–P.

United States District Court, Maine.

Dec. 6, 1989.

Ronald R. Coles, Kennebunk, Me., Bertram M. Goldstein, Jeffrey S. Goldstein, Baltimore, Md., for plaintiff.

Robert F. Hanson, Christopher C. Taintor, Portland, Me., Michael K. Yarborough, Frost & Jacobs, Columbus, Ohio, for defendants.

GENE CARTER, Chief Judge.

MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Defendants filed a Motion to Dismiss this suit in its entirety, claiming that the Court lacks the *in personam* jurisdiction required by Maine law and the Due Process clause

of United States Constitution. U.S.C.A. Const.Amend 14; 13–A M.R.S.A. § 1212(6) (Business Corporation Act); 14 M.R.S.A. § 704–A (long-arm statute). Defendants also maintain that *in personam* jurisdiction is lacking because of insufficiency of service of process.[1] Fed.R.Civ.P. 4(d)(3). The Court finds that the Maine business statute, 13–A M.R.S.A. § 1212(6), does not confer upon the Court *in personam* jurisdiction over Defendants and that Defendants' actions surrounding the filing of their Motion to Dismiss do not constitute grounds for Rule 11 sanctions. Therefore, Defendants' motion will be granted and Plaintiff's motion will be denied.

Plaintiff originally filed suit against Defendants as a named party in a class action on February 10th, 1988 in the United States District Court for the Eastern District of Pennsylvania. Plaintiff claimed that his son suffered toxic injuries as a result of exposure to pesticides applied by Defendants to an adjacent lawn. On June 17th, 1988, the Pennsylvania district court granted Defendants' motion to sever the class action and to transfer individual suits to districts where plaintiffs resided and/or their causes of action arose. That case was transferred to this Court on June 28th, 1988.

The suit proceeded in Maine, and the Court scheduled trial for July 17th, 1989. Plaintiff's counsel subsequently became aware of a scheduling conflict in their practice. After a request for an extension of time was denied, Plaintiff requested, and Defendant agreed, to file a written stipulation to voluntarily dismiss the case pursuant to Fed.R.Civ.P. 41(a)(1)(ii). The case was dismissed on June 14th, 1989. Plaintiff filed suit anew on July 17th, 1989.

Defendants move that the Court dismiss this suit for lack of *in personam* jurisdiction. Plaintiff argues that Defendants represented to the Pennsylvania district court that *in personam* jurisdiction existed in

---

1. The issue of insufficiency of service of process rests on whether Chemlawn Services Corporation is a wholly-owned subsidiary of Chemlawn Corporation because Plaintiff served process only on Chemlawn Services Corporation. The Court does not have before it sufficient facts in

this regard. Because the Court finds there is no personal jurisdiction, the Court need not, and will not, address this issue. For the purposes of simplicity only, therefore, the Court will refer to Defendants collectively as either "Defendants" or "Chemlawn."

Maine and, therefore, that Defendants consented to *in personam* jurisdiction in this suit. Plaintiff also maintains that regardless of consent, the Court has *in personam* jurisdiction over the Defendants because Defendants have sufficient minimum contacts with the State of Maine. Finally, Plaintiff argues that circumstances concerning Defendants' Motion to Dismiss evidence bad faith and a violation of Fed.R. Civ.P. 11.

## PRIOR CONSENT

■ Plaintiff maintains that Defendants' statements to the Pennsylvania district court regarding jurisdiction are judicial admissions that estop Defendants from objecting to *in personam* jurisdiction in this suit.[2] Defendants stated to the Pennsylvania district court in the "Law and Argument" section of their Motion to Sever and Change Venue that "venue is appropriate in the District of Maine" and "[j]urisdiction over the person of Chemlawn is also available in each of the judicial districts represented by the named plaintiffs." Defendants' Motion to Sever, at 23. Additionally, there is evidence from the Memorandum of Law Defendants provided to this Court that Defendants verbally consented to jurisdiction in discussions with Plaintiff's counsel.[3] Regardless of whether Defendants' statements and conduct are characterized as judicial admissions or verbal promises to opposing counsel, the Defendants, at most, consented to *in personam* jurisdiction in Maine in the suit, *"Sandstrom I,"* brought in Pennsylvania and transferred to Maine.[4]

This conclusion does not, as the Plaintiff believes, mean that Defendants' are bound by their consent to the exercise of *in personam* jurisdiction in *this* case. Defendants consented to jurisdiction only in *"Sandstrom I."* Defendants kept their word by not objecting to jurisdiction at any time when the transferred case was before this Court. That case was voluntarily dismissed on Plaintiff's initiative, without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1)(ii) because Plaintiff's counsel had some scheduling difficulties.

■ The effect of a voluntary dismissal without prejudice is to "render the proceedings a nullity and leave the parties as if the action had never been brought." *In Re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213, 219 (8th Cir.1977). A complaint filed subsequent to a voluntary dismissal must be treated as if it were attempting to join the adverse party for the first time. *Cabrera v. Municipality of Bayamon*, 622 F.2d 4, 6 (1st Cir. 1980); C. Wright & A. Miller, *Federal Practice and Procedure*, § 2367. The *Cabrera* court held that neither the doctrine of *res judicata* nor the law of the case applies where a case is dismissed without prejudice. *Cabrera*, 622 F.2d at 6. Thus, Defendants are not bound by statements made in the prior case regardless of how this Court characterizes their representations. It would be manifestly unjust to require Defendants to be subject indefinitely to *in personam* jurisdiction solely based on statements made expressly in respect to a case that has been dismissed. Therefore, if the Court has *in personam* jurisdiction over the Defendants in this particular action, it must be because such jurisdiction exists independently of the agreement of the parties in *"Sandstrom I."*

## IN PERSONAM JURISDICTION

■ Both parties agree that Chemlawn is licensed to do business in the State

---

2. Plaintiff, however, cites no legal authority in support of this position.

3. Defendant notes that while it does not remember a discussion with Plaintiff's counsel specifically, Defendant verbally consented to personal jurisdiction to other members of the class action who, like Plaintiff, changed their places of residence after the alleged cause of action arose. Defendants' Memorandum of Law in Opposition to Motion for Rule 11 Sanctions at 3–4.

4. It is well settled that the jurisdictional status of a district court as a court in which a suit "might have been brought" pursuant to 28 U.S.C. § 1404(a) does not depend on Defendants waiver of *in personam* jurisdiction or amenability of suit there. *McAdoo v. Union Nat. Bank*, 558 F.2d 1313, 1316 (8th Cir.1977). The jurisdictional status of a court is also not supplied by Defendants' request to transfer the case to that court. *Id.*

of Maine.[5] Chemlawn, as a licensed business, appointed an agent for service of process pursuant to 13–A M.R.S.A. § 1212(6). Chemlawn has no other contacts with the State of Maine and has never, in fact, done any business here.[6] Thus, the issue is whether 13–A M.R.S.A. § 1212(6) confers *in personam* jurisdiction, in and of itself, over defendant foreign corporations that are licensed to do business and, as required by statute, have appointed an agent for receipt of service of process, but do no business and have no contacts with the State of Maine. The Court finds that section 1212(6) does not confer *in personam* jurisdiction over defendants in such situations and, therefore, the Court lacks the requisite *in personam* jurisdiction over Defendant in this suit.[7]

■ The exercise of *in personam* jurisdiction must be authorized by state statute and must conform to federal due process. *Jones v. North American Aerodynamics, Inc.*, 594 F.Supp. 657, 659 (D.Me. 1984). A state may restrict the availability of *in personam* jurisdiction although a state's jurisdictional statute must still comport with constitutional due process. *See* C. Wright & A. Miller, *Federal. Practice and Procedure*, § 1069. The Court finds that 13–A M.R.S.A. § 1212(6), when interpreted in light of the entire Maine Business

Corporations Act, does not subject a foreign corporation to *in personam* jurisdiction where that corporation's only contact with the state is to obtain authorization to do business and, as dictated by law, to appoint an agent for receipt of service of process.

There is no Maine judicial precedent for the proposition that 13–A M.R.S.A. § 1212(6) subjects a corporation with no other contacts with the state to *in personam* jurisdiction.[8] The statute provides that a licensed corporation shall provide an agent for purposes of receiving service of all process permitted by law. The statute, however, neither equates receipt of process nor appointment of an agent with submission to *in personam* jurisdiction. The statute does not mention *in personam* jurisdiction at all and was not intended to confer such jurisdiction in and of itself.

In fact, 13–A M.R.S.A. § 1203, entitled "Effect of authorization to do business in State," codifies the legislative intent as to the consequences of qualifying to do business. The statute says simply that upon filing the application provided for in section 1202, the foreign corporation "shall be authorized to do business in this State" and defines the types of business so authorized.[9] Nothing whatever is said about the

---

5. Only Chemlawn Services Corp. is actually licensed to do business in Maine. In keeping with the discussion in n. 1, *supra*, the Court will continue to refer to Defendants collectively as "Chemlawn."

6. Plaintiff filed a supplemental memorandum in which he contends that Defendant advertised for employees in Maine. The Court will not, however, consider this memorandum because it was filed far outside the time requirements set out in Local Rule 19.

7. Where a corporation is not subject to jurisdiction under state law, it is unnecessary to consider the question of federal constitutional limitations on jurisdiction. *See Brewster v. Boston Herald–Traveler Corporation*, 141 F.Supp. 760, 763 (D.Me.1956).

8. The Court of Appeals for the First Circuit, interpreting a similar New Hampshire statute, held that the defendant consented to jurisdiction where the action was causally connected to defendant's acts in New Hampshire and where defendant appointed an agent for service of process pursuant to the New Hampshire statute.

*Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695 (1st Cir.1984). The Court of Appeals expressly did not reach the issue of whether *in personam* jurisdiction would be proper if the cause of action had no relationship to the state. *Holloway*, 739 F.2d at 699.

9. Title 13–A M.R.S.A. § 1203 reads in its entirety:

1. Upon filing by the Secretary of State of the application for authority, the foreign corporation shall be authorized to do business in this State, and may engage in any business:
A. Which it is authorized to do in the jurisdiction of its incorporation, and
B. Which may be done by a domestic corporation organized under or otherwise pursuant to this Act, unless in its application for authority the corporation expressly limited itself to a lesser number or type of businesses, in which case the corporation may engage in the business or businesses to which it so limited its application, if such business or businesses qualify under this paragraph and paragraph A.

exercise of jurisdiction over foreign corporations or about any submission of the foreign corporation to jurisdiction by qualifying to do business. A careful reading of Maine statutory law on the point renders it clear that it is the *doing of business* in Maine [10] that submits a foreign corporation to the jurisdiction of Maine courts. If the foreign corporation is *not* authorized under Title 13–A to do business in Maine, then the act of doing business, by the express terms of 13–A M.R.S.A. § 1213, subjects it to the jurisdiction of Maine courts. If, on the other hand, it *is* qualified under Title 13–A, it is subject to jurisdiction of Maine courts pursuant to 14 M.R.S.A. § 704–A, Maine's "long-arm statute," [11] under which the transaction of any business, *inter alia*, within the state by a non-resident constitutes submission to the jurisdiction of Maine courts.

The Maine Legislature, in enacting sections 1212(6) and 1213, separated and distinguished the issues of appointment of an agent for service of process and submission to jurisdiction. While both statutes involve the appointment of an agent for service of process, only section 1213 states when a corporation must submit to jurisdiction.

---

2. Such authority shall continue so long as the corporation retains its authority to do such business in its jurisdiction of incorporation, and so long as its authority to do business in this State has not been revoked or otherwise terminated as provided in this chapter.

13–A M.R.S.A. § 1203.

[10] The additional activities and acts specifically enumerated in Maine's "long-arm statute," 14 M.R.S.A. § 704–A(2)(B)–(I), also submit nonresidents to the jurisdiction of Maine courts. *See* n. 11, *infra*.

[11] Title 14 M.R.S.A. § 704–A reads in its entirety as follows:

1. **Declaration of purpose.** It is declared, as a matter of legislative determination, that the public interest demands that the State provide its citizens with an effective means of redress against nonresident persons who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this State and persons of other states.

This section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

2. **Causes of action.** Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

A. The transaction of any business within this State;

B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State;

C. The Ownership, use or possession of any real estate situated in this State;

D. Contracting to insure any person, property or risk located within this State at the time of contracting;

E. Conception resulting in paternity within the meaning of Title 19, chapter 5, subchapter III;

F. Contracting to supply services or things within this State;

G. Maintaining a domicile in this State while subject to a marital or family relationship out of which arises a claim for divorce, alimony, separate maintenance, property settlement, child support or child custody; or the commission in this State of any act giving rise to such a claim; or

H. Acting as a director, manager, trustee or other officer of a corporation incorporated under the laws of, or having its principal place of business within, this State.

I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

3. **Personal service.** Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, with the same force and effect as though summons had been personally served within this State.

4. **Jurisdiction based upon this section.** Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

5. **Other service not affected.** Nothing contained in this section limits or affects the right to serve any process in any other manner now or hereafter provided by law.

14 M.R.S.A. § 704–A.

13–A M.R.S.A. § 1213. Under section 1213, an unauthorized corporation which *does business in Maine* is considered to have appointed the Secretary of State to receive service of process and, *in addition*, submits itself to the jurisdiction of the courts of the state. 13–A M.R.S.A. § 1213; R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 4.8 (2d ed. 1981). If the Maine Legislature had intended the designation of an agent to be sufficient, in and of itself, to confer *in personam* jurisdiction over a corporation, it would not have needed to include the language, "submits to jurisdiction" in section 1213. Clearly, the Legislature did not intend for 13–A M.R.S.A. § 1212(6), which deals exclusively with the appointment of an agent, to also confer *in personam* jurisdiction.[12]

The statutes preceding 13–A M.R.S.A. § 1212(6) required that all corporations appoint an agent for service of process before doing business in Maine if the corporation "has a usual place of business in this State or ... is engaged in business in this State." 13 M.R.S.A. § 591 (1954); 53 Rev.Stat. § 127 (1949); 56 Rev.Stat. § 106 (1930); 51 Rev.Stat. § 107 (1911). Thus, courts applying the older statutes always analyzed whether or not the corporation was "doing business." *See, e.g., Brewster v. Boston Herald–Traveler Corporation,* 141 F.Supp. 760 (1st Cir.1956) (court found that defendant corporation was not doing business); *Boultbee v. International Paper Co.,* 229 F. 951 (1st Cir.1916) (court found that defendant corporation was doing business). The Maine Legislature did not include the statutory expressions "doing business" or "place of business" when it created section 1212(6), but did include the expression "doing business" in section 1213, the statute which stated that a corporation doing business had to submit to jurisdiction. The absence from section 1212(6) of the words used to confer jurisdiction, "doing business," is further evidence that the Legislature did not intend for section 1212(6) to confer *in personam* jurisdiction.

■ Finally, a corporation which does isolated or sporadic business here and, contrary to Maine law, has neither requested a license nor appointed an agent, is still only subject to *in personam* jurisdiction to the extent that the cause of action arises out of its business activity in the state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (definition of specific jurisdiction). It would be anomalous, therefore, to hold that Defendants, who followed Maine law by registering and obtaining a proper license to do business, including appointing an agent for service of process, are subject to *in personam* jurisdiction on *any* cause of action where they have not in fact transacted any business in Maine. Thus, the Court finds that 13–A M.R.S.A. § 1212(6) does not confer *in personam* jurisdiction, in and of itself, over Defendants who have transacted no business and have no contacts with Maine other than registering under section 1202.

### Minimum Contacts

■ Plaintiff claims that Defendants' licensure to do business and subsequent appointment of an agent for receipt of service of process are "minimum contacts" which satisfy the Fourteenth Amendment to the United States Constitution.[13] The Court finds that it would violate Defendants' due process rights if the Court were to exercise

---

**12.** When the absence of language creating *in personam* jurisdiction in 13–A M.R.S.A. § 1212(6) is compared with the language used in 13–A M.R.S.A. § 1213, the legislative intent not to confer jurisdiction by section 1212(6) is revealed. Section 1213 states that any corporation that *does business* and fails to be properly authorized by the state of Maine, "submits itself to the jurisdiction of the courts of this State, and also thereby designates the Secretary of State as its agent upon whom any process ... may be served...." 13–A M.R.S.A. § 1213 (emphasis added). Thus, although the Maine Legislature was clearly able to articulate when a corporation would be subject to jurisdiction, it chose not to use such language in enacting section 1212(6).

**13.** Because the Maine long-arm statute states that jurisdiction over nonresidents shall be asserted "to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment," the Court will only address Plaintiff's argument pursuant to the United States Constitution.

*in personam* jurisdiction over the Defendants under a minimum contacts analysis based solely on Defendants' mere registration and appointment of an agent for service of process under the Maine statute. A court's exercise of *in personam* jurisdiction must be "reasonable and just, according to our traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95. There are two methods by which the Court may analyze Defendants' contacts with Maine. A court may exercise specific jurisdiction where the controversy relates to or arises out of defendants' contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). If the controversy is unrelated to a defendant's contacts with the forum, a court may nonetheless subject the defendant to general *in personam* jurisdiction, if defendant's contacts with the forum state are continuous and substantial. *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952) (quoting *International Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. at 159). The Court finds neither specific nor general jurisdiction here.

This controversy did not arise out of Defendants' contacts with Maine. Defendants' only contacts with the forum are licensure and the appointing an agent for service of process. Plaintiff's claim is a tort claim arising out of actions of the Defendants that occurred within the State of Connecticut and not out of Defendants' registering to do business in Maine nor any business actually transacted by Defendants in Maine. Thus, there is no basis for the exercise of specific jurisdiction over this suit.

If Defendants' contacts with the forum are continuous and substantial, the Court may exercise general jurisdiction over the Defendant. *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 445–46, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952) (quoting *International Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. at 159). Because the controversy was unrelated to Defendants'

activity in the state, general jurisdiction is the only way in which the Court could exercise *in personam* jurisdiction. Plaintiff provides the following arguments against Defendants' objections to the Court's exercise of *in personam* jurisdiction: Defendants, Plaintiff claims, intended to do substantial business in Maine; Defendants moved to transfer their prior action to Maine; and Defendants purposefully availed themselves of the privilege of conducting activities within Maine and thus invoked the benefits and protection of Maine's law. The Court finds that mere registration to do business in Maine under the current Maine law and licensure for that purpose thereunder are not, without more, continuous and substantial contacts with the State of Maine.

Plaintiff cites no case, and the Court can find none, that supports the proposition that mere registration and licensure to do business within a forum, without more, is sufficient to satisfy the criteria for the existence of general jurisdiction. What business activities Defendants may have intended to, but did not, pursue in Maine is of minimum value to the Court in its determination of what Defendants' *actual* contacts were with the forum, and whether those contacts satisfy the due process minimum contacts test.

Plaintiff also cites no legal authority for the proposition that Defendants' conduct in defending "*Sandstrom I,*" or requesting a transfer of "*Sandstrom I,*" qualifies as sufficient contact with the forum for the Court to exercise general jurisdiction over a separate and distinct action. Maine law makes clear that "[m]aintaining, defending or participating in any action or proceeding whether judicial, administrative, arbitrative or otherwise ..." will not be considered doing business for due process purposes. 13–A M.R.S.A. § 1201. Thus, neither the intent to do business nor the move to transfer or maintain a lawsuit in Maine constitutes sufficient contacts with the forum for the Court's exercise of general *in personam* jurisdiction.

Finally, the Court disagrees that a license to do business, *without actually do-*

*ing any business*, qualifies under current Maine statutory law as availing oneself of the benefits and protection of state law as set out in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1953). "If the corporation conducts no business in the forum, it has not availed itself of 'benefits and protection of the laws' of the forum and there is no bargain between the corporation and the forum state...." *In Re Mid–Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1278 (D.Md.1981) (court's statement in concluding that consent statute incorporates due process requirement).

■ The overall test as to whether a court should exercise *in personam* jurisdiction over a defendant is whether exercising such jurisdiction would be fair or substantially just. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Furthermore, the Court should exercise *in personam* jurisdiction only where a Defendant should "reasonably anticipate being haled into [the forum] court." *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). It is reasonable for a corporation to assume, in light of Supreme Court precedent, that it must do some business within a state to subject itself to suit within the state. Defendants did no business in the state of Maine and could not reasonably anticipate being haled into Maine to defend a suit completely unrelated to its licensure in Maine. It would simply be unjust to exercise *in personam* jurisdiction over Defendants where their only contact with the state was to register to do business in the future.

### Rule 11

Plaintiff claims that Defendants' statements to the Pennsylvania district court, coupled with the subsequent motion to dismiss this action, is evidence that "Chemlawn has intentionally misrepresented and intended to mislead the Court." Plaintiff's Motion for Rule 11 Sanctions at 2. As noted in the first section of this opinion, Defendants are not bound in this action by the statements made with respect to the prior action before the Pennsylvania court. Thus, Defendants' statements regarding *in personam* jurisdiction made before this court do not constitute misrepresentations.

Defendants honored their consent in "Sandstrom I." Thus, Defendants did not mislead either the Pennsylvania district court or this Court.

For the foregoing reasons, Defendants' Motion to Dismiss is hereby *GRANTED*, and it is hereby *ORDERED* that Plaintiff's complaint be, and it is hereby, *DISMISSED* without prejudice. It is *FURTHER ORDERED* that Plaintiff's Motion for Rule 11 Sanctions be, and it is hereby, *DENIED*.